## DECLARATION OF COURTNEY RICHARDSON

I, Courtney Richardson, Special Agent of the Federal Bureau of Investigation, do hereby declare:

### Introduction and Agent Background

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since January 2020. I have been assigned to investigate violations of federal law involving a range of white-collar criminal violations. During my time at the FBI, I have received instruction and training, along with investigative experience, in contract fraud, financial institution fraud, wire fraud, and money laundering. Furthermore, I have been involved in interviewing subjects and witnesses; conducting physical surveillance operations; analyzing bank and other financial records; collecting and analyzing evidence; and preparing and executing warrants. Prior to joining the FBI, from 2008 to 2020, I worked as a senior manager within the financial services industry, where I was responsible for risk mitigation and third party budgets, including financial assessments. Prior to that, I worked as an Auditor, where I was responsible for identifying and reporting on incongruities in financial systems and processes. I also have a Master of Business Administration degree. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).

### Purpose of this Declaration

3. This declaration is submitted in support of a complaint for forfeiture *in rem* of $337,155.39 (the "Defendant Property") in funds seized from a Bank of America account ending in x2919 held in the name of Leverage One Nine LLC.

4. I submit there are sufficient facts to support a reasonable belief that the Defendant Property constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, and

thus is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and/or is property involved in a violation of 18 U.S.C. § 1957, and thus is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## Factual Summary

### *Economic Injury Disaster Loans*

5. In response to the COVID-19 pandemic, small business owners and non-profit organizations in all U.S. states, Washington DC, and territories became able to apply for an Economic Injury Disaster Loan (EIDL). EIDL was an existing SBA program designed to provide economic relief to businesses that were experiencing a temporary loss of revenue. To help small businesses "overcome the effects of the pandemic" and "provide working capital to meet operating necessary expenses," EIDL provided loan assistance, including up to $10,000 advances, for small businesses and other eligible entities for loans up to $2 million.[1] The EIDL proceeds could be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, nor to expand or start a business. Unlike certain other types of SBA guaranteed loans, EIDL funds were issued directly from the United States Treasury and applicants applied through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certified that the information provided was accurate and were warned that any false statement or misrepresentation to SBA or any misapplication of loan proceeds could result in sanctions, including criminal penalties.

---

[1] https://www.sba.gov/sites/default/files/2021-09/COVID-EIDL-FAQs-090821-508.pdf

*The Paycheck Protection Program*

6.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 designed to provide emergency financial assistance to Americans who were suffering from the economic consequences of COVID-19.

7.  The CARES Act authorized up to $659 billion in forgivable loans to small businesses for employee retention and certain business expenses through a program called the Paycheck Protection Program ("PPP") in 2020.

8.  The program authorized qualifying small businesses and other organizations to receive loans that were 100 percent guaranteed by the Small Business Administration ("SBA"), and the full principal amount of the loans may qualify for loan forgiveness. The business must use PPP loan proceeds on payroll costs, mortgage interest, rent, and utilities. Initially, the program allowed the principal to be forgiven if the business spent the loan proceeds on qualifying expenses within eight weeks of loan issuance and used at least 75 percent of the loan for payroll. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 went into effect. This law extended the period from eight weeks to 24 weeks that the loan proceeds had to be spent and reduced the requirement that the loan proceeds be spent on payroll from 75 percent to 60 percent.

9.  A business' number of employees and average monthly payroll costs for the 12-month period prior to the disaster determined the amount of PPP funding that the business may receive. Businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. To qualify for eligibility, businesses applying for a PPP loan needed to be in operation as of February 15, 2020.

10. The Small Business Administration ("SBA") administers the program and has authority over all PPP loans. However, approved lenders (usually private banks and credit unions,

3

i.e. "financial institutions" as defined by 18 U.S.C. § 20) issued the loans. The lenders received and processed PPP applications and supporting documentation, then made the loans using their own funds.

*Investigation into fraudulently-obtained EIDL and PPP disbursements*

11. The Defendant Property was seized from a Bank of America account ending in x2919 (BofA x2919) on or about September 21, 2021 in Baltimore, Maryland. An investigation has uncovered that the Defendant Property is primarily comprised of funds from EIDL and PPP disbursements issued based on fraudulent applications and laundered through a series of transactions as further described below.

12. According to bank records obtained from Bank of America, BofA x2919 was opened on July 30, 2020 on behalf of Leverage One Nine LLC (Leverage). Leverage was registered in the State of Maryland as a real estate investment company with three co-owners, each of whom had signature authority on BofA x2919. One additional person also had signature authority on the account.

13. SBA records show that on June 29, 2020, an online EIDL loan application was submitted on behalf of a Maryland business called Learning Music Together. The applicant was a family member of one of the co-owners of Leverage and signers on BofA x2919. The EIDL application contained material inconsistencies about revenue and the number of employees. Based on the information contained in the EIDL application, the SBA approved a $150,000 loan to Learning Music Together, which was deposited into a bank account at USAA Federal Savings Bank on July 7, 2020. Prior to the EIDL deposit, that account had a balance of approximately $158. Ultimately, after multiple transfers between bank accounts in amounts of over $10,000 in proceeds

of the fraudulently-obtained EIDL, most of the EIDL funds ended up in BofA x2919 as of August 21, 2020.

       14.     SBA records show that on June 20, 2020, an online EIDL application was submitted on behalf of a Maryland business called Melissa Jakes. The applicant was a family member of one of the co-owners of Leverage and signers on BofA x2919. The EIDL application contained material inconsistencies about revenue and the number of employees. Based on the information contained in the EIDL application, the SBA approved a $150,000 loan to Melissa Jakes, which was deposited into a bank account at Bank of America on July 21, 2020. Prior to the EIDL deposit, that account had a balance of $50.22. Ultimately, after multiple transfers in amounts of over $10,000 in proceeds of the fraudulently-obtained EIDL, most of the EIDL funds ended up in BofA x2919 as of August 21, 2020.

       15.     SBA records show that on June 22, 2020, an online EIDL application was submitted on behalf of a Maryland company called Regal Crown, LLC. The applicant was a family member of one of the co-owners of Leverage and signers on BofA x2919. The EIDL application contained material inconsistencies about revenue and the number of employees. Based on the information contained in the EIDL application, the SBA approved a $150,000 loan to Regal Crown, LLC, which was deposited into a bank account at Bank of America on July 26, 2020. Prior to the EIDL deposit, that account had a balance of $421.67. Ultimately, after multiple transfers in amounts of over $10,000 in proceeds of the fraudulently-obtained EIDL, most of those funds ended up in BofA x2919 as of August 19, 2020.

       16.     SBA records show that on June 20, 2022, an online EIDL application was submitted on behalf of a Maryland company called TLR Virtual Business Support. The applicant was a family member of one of the co-owners of Leverage and signers on BofA x2919. The EIDL application

contained material inconsistencies about revenue and the number of employees. Based on the information contained in the EIDL application, the SBA approved a $150,000 loan to TLR Virtual Business Support, which was deposited into a bank account at Bank of America on July 28, 2020. Prior to the deposit, that bank account had a balance of $2,433.45. Ultimately, after multiple transfers in amounts of over $10,000 in proceeds of the fraudulently-obtained EIDL, most of the EIDL funds ended up in BofA x2919 as of August 21, 2020.

17.    SBA records show that on May 28, 2020, an online EIDL application was submitted on behalf of a business called SCH Real Estate Holdings Statutory Trust (SCH). The applicant was a co- signer on BofA x2919. The EIDL application contained material inconsistencies about revenue and the number of employees. Based on information contained in the EIDL application, the SBA approved a $61,900 loan to SCH. On June 1, 2020, the $61,900 was deposited into a bank account at Bank of America. On May 29, 2020, SBA transmitted an additional $1,000 EIDL payment to the same Bank of America account, and on June 4, 2020, SBA transmitted a payment of $20,833 for a PPP loan.[2] The total of these three deposits from the SBA was $83,633. Prior to the three deposits from the SBA, that bank account had a balance of $454.47. Ultimately, after multiple transfers in amounts of over $10,000 in proceeds of the fraudulently-obtained EIDL and PPP loans, most of those funds ended up in BofA x2919 as of October 20, 2020.

18.    According to records from Bank of America, the co-owners of Leverage intended to use the funds in BofA x2919 for real estate investment. Real estate investment is not an authorized use of EIDL or PPP funds. Based on my training, knowledge and experience, this is indicative of fraud. Further, for each of the loan disbursements described above, the loan proceeds traveled

---

[2] Based on my training and experience, I know that $20,833 is the maximum loan amount an applicant can receive without supplying additional documentation, and it is therefore a red flag for fraud activity.

through at least one intermediate account before ending up in BofA x2919. Based on my training, knowledge and experience, this is indicative of a common money laundering technique known as layering that fraudsters use to distance their fraudulently-obtained funds from the criminal activity that generated the proceeds.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the facts submitted by the Federal Bureau of Investigation in reference to the seizure of $337,155.39 in funds from Bank of America account ending in x2919 in the name of Leverage One Nine LLC are accurate, true and correct to the best of my knowledge, information and belief.

Courtney Richardson
Special Agent
Federal Bureau of Investigation